### JONES v. AMALGAMATED BURLESQUE ENTERPRISE, Inc.

(District Court, W. D. New York. September 2, 1922.)

No. 371–B.

1. Quieting title ⊕12(9)—Surreptitious dispossession of another will not give possessory rights.

Surreptitious entry by complainant on premises conveyed by him 20 years before, and then in peaceable possession of the tenant of a subsequent grantee, and exclusion of such tenant from possession *held* unlawful, and not to give possessory rights which would support a suit to quiet title.

2. Trusts ⊕20—Deed to one "as trustee" held to vest transferable title in grantee.

A deed to a person "as trustee," without more, and to his heirs and assigns, under the law of New York, which requires a trust to be in writing

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

executed as provided by statute, *held* not to create a trust, but to pass title in fee to the grantee which he could convey to others; the words "as trustee" being merely descriptive.

In Equity. Suit by Lodowick Holmes Jones against the Amalgamated Burlesque Enterprise, Inc. Decree for defendant.

Lodowick Holmes Jones, of Buffalo, N. Y., in pro. per.
Thomas D. Powell, of Buffalo, N. Y., for defendant.

HAZEL, District Judge. The bill in equity asks for possession of the property described therein—the so-called old Academy of Music property, located on Main street, Buffalo—having considerable value, and for the judgment of this court decreeing that the deed of conveyance under which the defendant, Amalgamated Burlesque Enterprise, Inc., holds title is a void paper, constituting a cloud upon the premises, which should be removed.

The defendant in its answer states that plaintiff conveyed the premises to one Samuel Ellis in fee, though in the deed the name of the transferee is followed by the words "as trustee," and no more; that the action is barred by section 53 of the Civil Practice Act of the state, in that it did not accrue within ten years before the action was begun; also laches and res adjudicata, by judgment recovered in the Supreme Court in a prior action between the same parties.

It appears that in about August, 1900, the plaintiff rented the Academy of Music property, which then included a show or theater part and ruins from a fire of the old theater. On December 12, 1900, he subleased part of the premises to the newly organized Buffalo Theater Company for a period at first of 10 years and later 20 years, with the understanding that a new theater would be built by the lessee. A few days afterwards the plaintiff bought the premises of Adelbert Moot, owner, for $190,000, taking title thereto subject to an existing mortgage of $105,000, and giving a purchase-money mortgage to Mr. Moot for $85,000. The plaintiff agreed to reduce the first mortgage by paying $4,000 per annum for a time and for a subsequent time $8,000 per annum. He paid nothing in cash at the time of the purchase, merely agreeing to pay the existing mortgages. On February 11th, after the Buffalo Theater Company had built a new theater, or made valuable extensions or alterations, the plaintiff made and delivered his quitclaim deed to "Samuel Ellis, as trustee," unaccompanied by any description as to the character or duration of the trust or any powers or duties imposed or the name of any beneficiary. The said deed was recorded on February 13, 1902, in the Erie county clerk's office.

In the year 1906 Ellis, who in the meantime had collected the rents, paid accruing taxes, interest on mortgages, and expenses generally, conveyed the premises individually and as trustee to the Buffalo Central Improvement Company, which later conveyed to the United Traders' Realty Company; the latter conveying to Levy, who conveyed and transferred to the defendant company. Additional mortgages were placed against the property and existing obligations were assumed by the various grantees, who were in continuous possession and control of the property under their respective conveyances. Plain-

tiff, who is a lawyer, testified that Ellis was merely "a pawn" in the transaction by which he conveyed to him; the conveyance in fact being arranged with one Ramsdell, who was an officer of the Buffalo Theater Company and interested in its promotion.

During a period of nearly 20 years plaintiff failed to assert any legal or equitable rights of ownership to the premises, except in 1916, by an action in ejectment in the Supreme Court of this state against Ramsdell and Ellis, as trustee, et al., and asking that the quitclaim deed in question be set aside and declared void. A demurrer was interposed to the answer, and various defenses, including the 10-year statute of limitations (section 388, Code of Civil Procedure, now section 53 of the Civil Practice Act), and laches, which was overruled, the court holding that such defenses were valid, and thereafter judgment dismissing the complaint was entered.

On February 5, 1922, plaintiff came to Buffalo for the purpose of instituting an action to gain possession of the property. He surreptitiously entered the theater part of the building at night, when it was closed to the public and in charge of a watchman. Effecting entry, he locked the inside of the door, leaving the watchman and other employees of defendant, who were on the premises, on the outside, and he refused access to them. He hired private detectives to assist him in obtaining and retaining his asserted peaceful and actual possession. He slept in the theater, to hold his possession against the defendant and its group of employees, who were endeavoring peacefully to eject him from the interior of the theater. It reached a stage where, as he states, he feared a personal encounter might ensue, and he then gave notice that he, as owner of the property, was in quiet and peaceful possession thereof. He admonished defendant's employees to refrain from entering, and, refusing to do so, he ordered them to vacate the premises; but on the night of February 7th they would not stay out of the theater, and plaintiff yielded by retiring from the field. Did such acts on the part of the defendant and its employees constitute in law forcible entry and detainer?

[1] Plaintiff, in view of the circumstances, could not possess himself of the premises by the methods adopted by him, since in my opinion he was not the true owner. It is true there can be no wrongful detainer by the rightful owner and landlord when the entry was both lawful and peaceable. Bliss v. Johnson, 73 N. Y. 529. But such a situation is not presented here. The attempt by subterfuge to possess himself of the premises which 20 years before he had conveyed to Ellis, as trustee, was wrongful, and the situation does not justify his attempt. He was not the landlord of the defendant, seeking possession of the premises after the end of the term of letting. Defendant was in peaceful and open occupancy of the premises by color of right, and a clandestine entry at night by plaintiff, in face of the fact that no right, title, or interest therein had been asserted, save by the abandoned action, was unwarranted, especially as his right to possession was originally disputed. The authorities to support his method of obtaining possession of premises claimed to be owned by him, but of which others are in possession, are inapposite. The contention that his peaceable

possession was disturbed by defendant, and that it became and is liable for forcible entry and detainer, is not sustained.

[2] However, in my view, the vital point in this case is whether the deed to Ellis, as trustee, really conveyed the fee of the premises to him, and whether he was given the right to convey the same by good title. Upon its face the quitclaim deed unquestionably constituted a valid conveyance. It imposes no conditions whatever, but in clear terms released, remised, and quitclaimed to Ellis, as trustee, his heirs and assigns, forever. No specific trust or beneficiary is specified, no limitation or condition curtailing his title is embodied, and, indeed, there is nothing to show that the creation of a valid trust limiting the beneficial interest of the transferee was intended, or any right reserved to the grantor.

In Fowler v. Coates, 201 N. Y. 257, 94 N. E. 997, the transferee was described "as trustee for the subscribers for the fund to establish a canning factory at Lowville, N. Y."; but the court nevertheless held that, regardless of description, the transferee obtained title as an individual, even though he took as trustee, and it might be assumed that his relations to the subscribers to the fund rendered him liable to them to account for his acts, but that the deed itself does not create a trust which limited the beneficial interest in him or his right to convey to another.

In New York it is required, in order to create a valid trust, that it be created in accordance with the statute law of the state, and it must be evidenced in writing what its nature and conditions are. The Court of Appeals in the Fowler Case used language which I think is applicable to the deed in question here:

"We certainly know nothing of any trust here, other than the assumption by West and by these plaintiffs of the description of trustees. That was a matter of description and not of substance. If the deed to him was for the benefit of others, he nevertheless held the legal title and could convey it to the purchasers."

In King v. Townshend, 141 N. Y. 358, 36 N. E. 513, the transferees were described "as trustees of the New York City Land Association"; but, since the conveyance embodied in the habendum clause the words "as joint tenants to the survivor of them, his heirs and assigns forever," it was rightly held that the fee passed and good title could be conveyed.

In Pratt, as trustee, v. Prentice, 166 App. Div. 906, 151 N. Y. Supp. 259, which was an action in ejectment, the plaintiff claimed title under a conveyance to Pratt as trustee, and the court held that the legal effect of the conveyance was to establish title in the plaintiff in the absence of impeaching evidence showing the elements of a trust. So, also, in People v. Stockbrokers, etc., 49 Hun, 349, 2 N. Y. Supp. 113 (affirmed 112 N. Y. 670, 20 N. E. 414), the deed described the grantee as trustee for the Association of the Open Board of Stockbrokers of the city of New York, and by the sale of the described property by the trustee to another the title was held valid, unless it appeared that the conveyance was in contravention of the trust. There the premises were purchased from the trustee at a judicial sale and the purchaser was

compelled to complete his purchase, notwithstanding his objection that the title was invalid because of failure to specify the trust, and the grantor of McLean, the trustee, was estopped from claiming any title to the premises.

This case is claimed by plaintiff to be favorable to his contention, but, upon carefully reading it, it will be observed that the crux of the holding was that the grantor could not claim that the entire title was not vested in McLean as trustee. It is said, however, that the use of the adverb "as" clearly shows an intention to vest title in Ellis in a representative capacity only, and that the presumption in the circumstances would be that a valid express trust was created. But the adjudications bearing on this point were upon essentially different facts, and generally the holding of the court was predicated upon fiduciary relations existing between plaintiff and defendant. In an action by plaintiff against Ellis for an accounting (assuming that the parol evidence established a trust), such a presumption, perhaps, would not be unfounded. It does not, however, obtain against plaintiff's grantee, in view of the failure to make declaration of trust in the deed and the conveyance by Ellis as an individual.

Various other adjudications in the state and federal courts are cited in support of the argument that the deed to Ellis was void and the legal title to the premises remained in plaintiff; but such actions are differentiable, and my holding is that the words "as trustee," in view of the absolute terms of transfer, were merely descriptive. There was no evidence introduced to actually show the existence of a trust estate; but, if there had been, it is doubtful whether the conveyance to the defendant could be set aside. It is true that in Railroad Co. v. Durant, 95 U. S. 576, 24 L. Ed. 391, the Supreme Court had before it a deed wherein the transferee was designated as trustee for the plaintiff, without, however, specifically setting out for whom or what purpose. The Supreme Court said in its opinion that parol evidence was permissible to show these things. "The designation alone was sufficient to devolve the duty of inquiry upon any third person dealing with the property." But in that case the trustee, who was the defendant, had acquired the property for the railroad company, and the conveyances to him were as trustee, same as if they had been to the company, and in view of the circumstances parol evidence obviously was admissible to prove that the purchase of land had been made for and on account of the plaintiff.

Other questions negativing plaintiff's right to recover were presented; but, since I am convinced that the quitclaim deed in question was not invalid, that the grantee had the right to convey and give title thereto, and that the words "as trustee" were descriptive only, it would seem unnecessary to discuss other defenses.

The bill is without equity, and may be dismissed, with costs.